**Phillip Maurice BOUYER, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 04–07–00363–CR.**

Court of Appeals of Texas,
San Antonio.

May 7, 2008.

266

Roderick B. Glass, Assistant Public Defender, San Antonio, TX, for Appellant.

Alison A. Fox, Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## MEMORANDUM OPINION

STEVEN C. HILBIG, Justice.

Following a jury trial, appellant Phillip Maurice Bouyer was convicted of the felony offense of possession of a controlled substance. The jury assessed punishment at eight years confinement in the Texas Department of Criminal Justice—Institutional Division. Bouyer appeals claiming the trial court erred in denying his motion to suppress. We affirm the trial court's judgment.

## BACKGROUND

San Antonio Police Officer Patrick Hale testified that he and Officer David Bornhauser received a dispatch to room 324 of the Motel 6 on Rittiman Road. According to dispatch, a call had been received "that someone was selling or—selling and cooking drugs." The officers went to the motel office and were told the registered occupant of room 324 was Phillip Bouyer. Officer Hale testified that when they approached room 324 he smelled "the odor of burnt marijuana filtered through the air conditioning unit of the room." The officers stated they knocked on the door of room 324 and Bouyer opened the door. Bouyer stepped back after opening the door and Officer Bornhauser testified he could see "drug paraphernalia and some narcotics on the table and night stand inside the room." More specifically, he saw "a few crack rocks, rocks of crack cocaine," "a cut up can, tin can, aluminum soda can or something," "loose marijuana," "a small baggie of cocaine," and "crack pipes." Officer Hale testified he could see "crack pipes" and "white powder scattered on the tables" inside the room from his vantage point outside the room. Officer Hale also testified he saw two other individuals, William Walker and Linda Jasper, in the room.

After observing the drugs and paraphernalia, the officers entered the room. They handcuffed and patted down Bouyer and the other two individuals. The officers called for back up and an evidence technician. The evidence technician took photographs of the contents of the room. Officer Bornhauser collected the evidence and transferred it to the property room. Kristen Schug, a forensic scientist with the Bexar County Criminal Investigation Laboratory, tested the items seized and testified two of the items tested positive for "cocaine free alkaloid also known as crack cocaine," and one tested positive for "cocaine hydrochloride ... the powder form of cocaine." She testified the total weight of all three items was 1.393 grams.

At trial, the State offered the photographs, paraphernalia, and drugs into evidence. When each item of evidence was offered, Bouyer's counsel stated he had "no objections."

Bouyer was convicted of possession of a controlled substance in an amount more than one gram but less than four grams. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.115(a), (c) (Vernon Supp.2007 & Vernon 2003). He appeals, contending the trial court erred in denying his motion to suppress because the officers' warrantless entry into his hotel room, while supported by probable cause, was made without the existence of exigent circumstances and therefore violated his rights under the Fourth Amendment. The State responds to Bouyer's complaint by arguing (1) he waived his suppression challenge by expressly stating he had "no objection" to the admission of the cocaine when it was offered into evidence, and (2) even if he did not waive error, the evidence was lawfully seized under the plain view exception to the warrant requirement.

## DISCUSSION

### *Waiver*

■ Bouyer filed a pretrial motion to suppress the evidence seized but did not request a pretrial hearing. The suppression issue was first raised during Officer Hale's testimony. After Officer Hale testified to seeing crack pipes and white powder in Bouyer's room, the following exchange took place out of the jury's presence:

DEFENSE COUNSEL: Judge, I don't know when you want to have the evidentiary hearing, but I think it's appropri-

268

ate. I don't know if it would be appropriate at this time. I want to challenge the warrantless entry and search. Do we want to do that after the witness or after—

THE COURT: There's really no reason not to proceed. If I decide not to allow the evidence, it won't be stated to the jury and they [sic] will not be allowed to consider it.

DEFENSE COUNSEL: Okay.

THE COURT: Do you have any problems with that?

DEFENSE COUNSEL: I don't have any problems with that, it's just that at this time I'm challenging it as a warrantless entry into the motel room and at this point we are going into the entry into the hotel room. I'm just presenting the Court the option to do that at this time.

THE COURT: Let's proceed.

DEFENSE COUNSEL: Okay.

The State then proceeded with the presentation of its case. Each time the State sought to introduce evidence of the cocaine seized from Bouyer's room, his counsel specifically stated he had "no objections" to the admission of the evidence. More specifically, Bouyer's counsel affirmatively stated he had "no objections" to the admission of the photographs of the paraphernalia and drugs found in Bouyer's room, the cocaine, or the forensic scientist's report.

After the State introduced all of its evidence, and despite defense counsel's affirmative statements that he did not object to the introduction of the State's evidence, the trial court held an evidentiary hearing on Bouyer's motion to suppress. Over the State's objection that Bouyer had waived his right to a determination on the motion to suppress by affirmatively stating he had no objection to the evidence, the trial court permitted defense counsel to call the offi-

cers and question them about events surrounding the seizure of the drugs and the arrest of Bouyer. After the hearing, the court orally denied the motion to suppress and then memorialized the oral ruling in a written order.

■ Generally, a defendant affirmatively waives his right to have the trial court determine the admissibility of evidence when he states he has "no objection" to the evidence when it is offered by the State. *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim.App., 2008). Such a defendant cannot claim on appeal that the evidence "was illegally obtained under the United States or Texas Constitutions or under Article 38.23." *Id.* Pursuant to *Holmes* as well as numerous other cases from the Court of Criminal Appeals, Bouyer seemingly waived his right to have the trial court determine the admissibility of the evidence. *See id.* However, because of the actions taken by the trial judge in this unique case, we find this case distinguishable from *Holmes*, the cases relied on by the State, and the myriad of cases finding waiver when a defendant states he has "no objection" to the evidence. Neither in *Holmes* nor in the other cases did the trial court conduct a suppression hearing **after** the apparent waiver. *See, e.g., id.; Dean v. State*, 749 S.W.2d 80, 83 (Tex.Crim.App. 1988); *Harris v. State*, 656 S.W.2d 481, 484 (Tex.Crim.App.1983); *McGrew v. State*, 523 S.W.2d 679, 680–81 (Tex.Crim. App.1975). Here, Bouyer raised the suppression issue before the introduction of the evidence and the trial court advised that it would consider the matter at a later time. Then, after the introduction of the evidence, the trial court agreed to consider the suppression issue despite counsel's affirmative statements of "no objection." By holding the suppression hearing over the State's "waiver" objection, the trial court clearly did not construe Bouyer's "no ob-

jection" as a waiver of his motion to suppress. Accordingly, we decline to dispose of this case on waiver as suggested by the State and, in light of the record and in the interest of justice, we will review the merits of Bouyer's complaint.

### Motion to Suppress

Bouyer contends that while the officers had probable cause, they "lacked exigent circumstances to enter [his] hotel room." *See McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991) (holding that to justify warrantless search, State must show existence of probable cause at time of search and exigent circumstances that made procuring of warrant impracticable). The State counters the evidence was lawfully seized under the plain view exception to the warrant requirement. *See Clark v. State*, 548 S.W.2d 888, 889 (Tex.Crim.App. 1977) (holding that "police officer may seize what he sees in plain sight or open view if he is lawfully where he is.")

### Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). On appeal, we must view the record in the light most favorable to the trial court's ruling and reverse only if the ruling is outside the zone of reasonable disagreement. *Id.* We must give almost total deference to the trial court's determination of historical facts, especially those based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We conduct a *de novo* review with regard to the trial court's application of the law of search and seizure to the historical facts. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex.Crim.App.2007). If the trial court's ruling "is reasonably supported by the record and is correct on any

theory of law applicable to the case," we must sustain the trial court's ruling. *Dixon*, 206 S.W.3d at 590.

### Analysis

▪ The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment does not prohibit all searches and seizures, but only those that are unreasonable. *Ibarra v. State*, 11 S.W.3d 189, 192 (Tex.Crim.App.1999). The central inquiry under the Fourth Amendment is the reasonableness of the search or seizure under the totality of the circumstances. *Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App.1998). "[T]he reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *U.S. v. Knights*, 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)).

▪ The plain view doctrine involves no invasion of privacy. *See Texas v. Brown*, 460 U.S. 730, 738–39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App. 2000). If an item is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Walter*, 28 S.W.3d at 541. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment. *See Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). "The plain view seizure doctrine requires a

two-prong showing: (1) that law enforcement officials see an item in plain view at a vantage point where they have the right to be, and (2) it is immediately apparent that the item seized constitutes evidence—that is, there is probable cause to associate the item with criminal activity." *Martinez v. State*, 17 S.W.3d 677, 685 (Tex.Crim.App. 2000) (citing *Ramos v. State*, 934 S.W.2d 358, 365 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997)).

Bouyer does not contest that there was probable cause to associate the cocaine and associated paraphernalia with criminal activity. Nor does he contend that the seized items were not in plain view and visible from the open doorway of the motel room. Rather, Bouyer seems to suggest the officers did not observe the seized items from a vantage point where they had a right to be given their "use of subterfuge by lightly tapping on the door and by not announcing themselves as police." We disagree.

█ Nothing in the federal or Texas Constitutions prevents a police officer "from knocking politely on any closed door." *Cornealius v. State*, 900 S.W.2d 731, 733 (Tex.Crim.App.1995) (citing *Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex. Crim.App.1983)). "Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably ... to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law." *Cornealius*, 900 S.W.2d at 734 (citing *Bower v. State*, 769 S.W.2d 887, 897 (Tex.Crim.App.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991)). Just as an officer may knock on the front door of a private home without implicating the Fourth Amendment, he may knock on the door of a motel room. *See Capuchino v. State*, 389 S.W.2d 296, 298 (Tex.Crim.App.1965), *cert. denied*, 386 U.S. 928, 87 S.Ct. 869, 17 L.Ed.2d 800 (1967) (holding that walkway of motel was public area from which officer were entitled to make observations); *cf. Evans v. State*, 995 S.W.2d 284, 285 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd) (holding that parking lots and sidewalks of apartment complexes are public spaces where residents have no reasonable expectation of privacy); *Cuero v. State*, 845 S.W.2d 387, 391 (Tex.App.–Houston [1st Dist.] 1992, pet. ref'd) (holding that "public place" is any place where substantial group of public has access, including common areas of apartment houses).

Based on the foregoing, the officers could knock on and stand outside Bouyer's door without violating the constitutional prohibitions against unreasonable search. It was Bouyer's choice to open the door. While lawfully at the open door of Bouyer's hotel room, the officers were free to observe evidence in plain view. The items viewed and subsequently seized by the officers were not subject to Fourth Amendment protection. *See Bower*, 769 S.W.2d at 897 (holding that what person knowingly exposes to public, even in his own home, is not search subject to Fourth Amendment protection). Accordingly, we hold the trial court did not err in denying Bouyer's motion to suppress.

## CONCLUSION

We overrule Bouyer's sole issue and affirm the trial court's judgment.