ACCEPTED
06-14-00232-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/13/2015 12:00:00 AM
DEBBIE AUTREY
CLERK

IN THE COURT OF APPEALS FOR THE
SIXTH JUDICIAL DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
4/13/2015 9:49:00 AM
DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| CHRISTI BETH PERRIN | § | |
| APPELLANT | § | |
| | § | No. 06-14-00232-CR |
| V. | § | |
| | § | |
| THE STATE OF TEXAS | § | |
| APPELLEE | § | |

ON APPEAL FROM THE COUNTY COURT AT LAW 4, COLLIN COUNTY, TEXAS, AND FROM CAUSE NUMBER 004-82924-2014, THE HONORABLE DAVID RIPPEL, PRESIDING.

APPELLANT'S BRIEF

JOHN L. SCHOMBURGER
STATE BAR NO. 17801540
555 REPUBLIC DRIVE #200
PLANO, TEXAS 75074
PHONE (972) 978-2218
FAX (972) 468-1430
jschomburger@gmail.com
ATTORNEY FOR APPELLANT

Oral Argument Not Requested

# NAMES OF PARTIES

Pursuant to Tex. R. App. P. Rule 38.1, the following is a complete list of the parties and persons interested in the outcome of this cause:

1.  Christi Beth Perrin, 110 Murchison Street, Farmersville, Texas 75442 the Appellant;

2.  John Schomburger, 555 Republic Drive #200, Plano, Texas 75074, counsel for Appellant on appeal,

3.  Gerald "Gary" Knapp, Knapp Law Firm, PLLC, 2150 S. Central Expressway Suite 200, McKinney, Texas 75070, counsel for the Appellant at trial,

4.  The State of Texas, by and through Collin County Criminal District Attorney Greg Willis, and Assistant Criminal District Attorney John Rolater, 2100 Bloomdale Road Suite 200, McKinney, Texas 75071.

# TABLE OF CONTENTS

NAMES OF PARTIES…………………………………………………………………1

TABLE OF AUTHORITIES……………………………………………….. 3

STATEMENT OF THE CASE……………………………………...………….5

ISSUE PRESENTED …………………………………...………………..………6

STATEMENT OF FACTS…………………………………………………...7

SUMMARY OF THE ARGUMENT…………………………………...……9

APPELLANT'S POINT OF ERROR ONE…………………………...….…10

    THE TRIAL COURT ERRED BY DENYING THE APPELLANTS
    MOTION TO SUPPRESS AS THE APPELLANT WAS ILLEGALLY
    STOPPED AND DETAINED

PRAYER………………………………………………………...……26

CERTIFICATE OF COMPLIANCE………………………….………………27

CERTIFICATE OF SERVICE…………………………….…………….....27

# AUTHORITIES

**Cases:**

*Berkemer v. McCarty,*
  *468 U.S. 420 (1984)*…………………………………………………………*12*
*Bouyer v. State,*
  *264 S.W.3d 265 (Tex.App. -San Antonio 2008)*…………………………………*14*
*Carmouche v. State,*
  *10 S.W.3d 323, 327-328 (Tex. Crim. App. 2000)*…………………………………*23*
*Corbin v. State,*
  *85 S.W.3d 272, 276 (Tex. Crim. App. 2002)*………………………………………..*25*
*Crain v. State,*
  *315 S.W.3d 43, 52 (Tex.Crim.App. 2010)*………………………....………*21, 23, 24*
*Dahlem v. State,*
  *322 S.W.3d 685, 691 (Tex. App. – Fort Worth 2010)*………….……………….*12*
*Ford v. State,*
  *158 S.W.3d 488, 492 (Tex.Crim.App. 2005)*…………………….…......*12, 22, 23*
*Garcia v. State,*
  *43 S.W.3d 527, 530 (Tex.Crim.App. 2001)*…………………….……………...*22*
*Hudson v. State,*
  *205 S.W.3d 600, 604 (Tex. App. – Waco 2006)*……………………………….....*21*
*Johnson v. State,*
  *912 S.W.2d 227, 235 (Tex.Crim.App. 1995)*……………………………………..*20*
*Montanez v. State,*
  *195 S.W.3d 101, 104 (Tex.  Crim. App. 2006)*……………………………………*13*
*St. George v. State,*
  *237 S.W.3d 720, 726 (Tex.Crim.App. 2007)*……………………….……………*22*
*Thomas v. State,*
  *408 S.W.3d 877, 881 (Tex. Crim. App. 2013)*………………………*12, 13, 14, 19*

**Statutes and Constitutional Provisions:**

Tex. Code of Criminal Procedure § 38.23 ………………………...………..*21*
Texas Constitution Art. I, section 9, 10 and 19 ……………………….……..…*21*
U.S. Const. Amend. IV……………………………………………….…………....*21*

| | | |
|---|---|---|
| CHRISTI BETH PERRIN | § | |
| APPELLANT | § | |
| | § | No. 06-14-00232-CR |
| V. | § | |
| | § | |
| THE STATE OF TEXAS | § | |
| APPELLEE | § | |

TO THE HONORABLE COURT OF APPEALS:

Appellant, CHRISTI BETH PERRIN, respectfully submits this brief pursuant to the Texas Rules of Appellate Procedure in support of her request for the court to reverse the ruling of the trial court regarding the Appellant's *Motion to Suppress* and remand the case to the trial court for further proceedings in cause number 004-82924-2014.

## REFERENCES TO THE RECORD

References to the Clerk's Record for trial court, cause number 004-82924-2014 are designated as (CR page #) and references to the Reporter's Record are designated as (RR volume#: page #).

## STATEMENT OF THE CASE

Appellant Christi Beth Perrin was brought to jury trial on a misdemeanor information filed in Collin County Court at Law 4. (CR 9). She was charged with DWI, a Class B misdemeanor. (CR 9). The Appellant pleaded not guilty. (RR 2: 107). A jury heard evidence from both parties and found the Appellant guilty as charged. (RR 3:104). The jury then assessed punishment at 6 days in the county jail. (CR 76-77). Ms. Perrin now appeals. (CR 79).

## ISSUES PRESENTED

The point of error that the Appellant argues is that the Appellant was illegally detained when her car was stopped by a police officer without reasonable suspicion. The trial court erred by overruling the motion to suppress on this issue.

## STATEMENT OF FACTS

The Appellant Christi Beth Perrin was charged and convicted for the Class B misdemeanor offense of DWI. (CR 9). According to the arresting officer, she was stopped for driving a few feet after the officer had seen that her car was briefly unoccupied with the door opened. (RR 2:127, and State's Exhibit 1). After detaining her, officers believed she was intoxicated on prescription medications. (RR 2:143).

The Appellant had traveled from Farmersville to Allen to look for her boyfriend that she had recently broken up with. (RR 2: 121, 164-165, State's Exhibit 1). She pulled off on a side road that was used for residents to park their cars at the 400 block of Twin Creeks Drive in Allen. (RR 2:115, 121-122). This was a residential area with houses, trees, and street lamps. (RR 2: 117). She had left her car to see if her former boyfriend's car was in the area. She thought that he was there visiting a woman who lived in the area. (State's Exhibit 1).

The arresting officer first saw Ms. Perrin's car. (RR 2: 125). He testified that it was parked, but the door was open and the interior light was on. (RR 2:125). The car, a black sedan, was unoccupied at that point. (RR 2:125). He turned his car around to find out why the car was open and unattended. (RR 2:125). He wanted to investigate whether someone had broken into the car, although on cross examination he characterized what he was doing as kind of caretaking stuff. (RR 2:125, 155). When he pulled up to where the car was located, the officer saw Ms. Perrin walk on the

side of the road along other vehicles and get in her car. (RR 2:127). She started to drive off when the officer stopped the Appellant even though the officer did not see that the Appellant was doing anything illegal. (RR 2:127, 153-155). The video does not seem to support the officer's claims. On the video, the door on the car is closed and not open. (State's Exhibit 1). Also, there are no other visible cars that can be seen that the appellant was supposed to be walking next to. (State's Exhibit 1).

Nevertheless, after he stopped her, he had her exit the vehicle and noticed that Ms. Perrin was wearing her polo shirt backwards. (RR 2:128). He interviewed her asking her what business she had to be traveling from Farmersville to Allen. (RR 2: 130). The officer decided to have Ms. Perrin submit to field sobriety tests. (RR 2:131). The officer arrested her for DWI and drove her to the Allen police station. (RR 2:143, 145). There, she agreed to give a blood sample and participate in further tests given by a Drug Recognition Expert (DRE) officer. (RR 2:146, 152,169,170).

The lab report came back showing prescription type substances in her blood that were at a therapeutic level. (RR 3: 19, 34, 43-44).

## SUMMARY OF THE ARGUMENT

The point of error that the Appellant argues is that the Appellant was illegally stopped in her vehicle by on officer who lacked reasonable suspicion to do so. Therefore, all of the evidence developed after that illegal stop, which was used to prosecute her for Driving While Intoxicated, should have been suppressed by the trial court.

POINT OF ERROR ONE

THE TRIAL COURT ERRED BY DENYING THE APPELLANTS MOTION TO SUPPRESS AS THE APPELLANT WAS ILLEGALLY STOPPED AND DETAINED

The point of error in this case revolves around the Appellants stop by an officer as she was pulling out of her parking spot. (RR 2: 127) The Appellant was stopped only feet from the parking spot even though the officer lacked reasonable suspicion to stop her car. (RR 2: 126-127; State's Exhibit 1). The trial court therefore erred in overruling the Appellant's *Motion to Suppress*.

**Facts of the Stop**

Allen Police Officer Antony Brown was on patrol when he testified that he noticed a black sedan with the driver's door open and the light on inside of the car as it was parked at Twin Creeks in front of a home. (RR 2: 125-126). The video from the patrol car, however, does not show the car door open; it instead appears to be closed. (State's Exhibit 1). It was 12:30 a.m. when he first saw the car and no one was in the vehicle. (RR 2: 125). The car was located in an inlet area where residents unusually park. (RR 2: 125). Officer Brown turned around to investigate since he didn't know if the car had been broken into. (RR 2: 125-126).

As he was turning around to get to the vehicle, he testified that he observed a female walking along other vehicles on the same side of the road. (RR 2:127). Again

the video does not seem to corroborate the officer's story. In the video you cannot see any vehicles on the side of the road, and when the patrol car leaves the location after the arrest, there is not a car to be seen parked against the street. (State's Exhibit 1).

When the officer arrived where the car was located, he parked directly in front of the vehicle of which he estimated was 30 to 40 feet. (RR 2: 126). He also observed the woman get into the vehicle and saw that she started to drive away. (RR 2: 127). When the car was driving away, Officer Brown's driver's door was already open. (RR 2: 127). He had also already run the license plates on the car and knew that the address registered to the vehicle was not anywhere in the immediate vicinity; and so, "I stopped her there then to find out why she left her car sitting there with the door open and was walking, you know, along the other vehicles on the roadway." (RR 2: 127). It was after the officer made the stop of the vehicle that he noticed that the Appellant had her shirt on backwards. (RR 2: 128). It was at this point that the officer began to investigate and develop the evidence for the DWI charge. (RR 2:128 – 131).

Prior to the stop, the car was not parked illegally and the officer conceded that it is not illegal if the plate was not registered to an Allen address. (RR 2: 154-155). When he was questioned about his reason for the stop, the officer agreed that he stopped her to see why the door was open and added to see why she was walking

among the other vehicles (although he just sees her walking back toward the car with the open door), kind of caretaking stuff. (RR 2: 155).

**Burden of Proof for the Trial Court**

A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion. *Berkemer v. McCarty, 468 U.S. 420 (1984)*. Once the evidence shows that the stop of the accused was effected without a warrant, the state has the burden of proof to establish that the search or seizure was reasonable. *Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005)*. An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005)*. In this case, the officer's testimony was clear as to the reason why he stopped the Appellant's vehicle. The reason for the stop was because he saw a car with an open door and a woman walking. (RR 2:155). Because his actions were based upon what he viewed rather than due to a warrant, the state must prove that the stop of the Appellant's vehicle was reasonable.

**Preserving Error and Forfeiture of That Preservation**

An adverse ruling on a motion to suppress is ordinarily sufficient to preserve error. *Thomas v. State, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013)*. A written order

is not a prerequisite to preserve the court's denial of the motion to suppress. *Dahlem v. State, 322 S.W.3d 685, 691 (Tex. App. – Fort Worth 2010)*. Actions or statements of a trial court can constitute an implicit ruling when they unquestionably indicate a ruling. *Montanez v. State, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006)*. In this case the ruling from the court is clear. The trial court specifically ruled on the record that the motion to suppress was denied, thereby preserving the issue for review. (RR 2:160)

Once the adverse ruling is preserved, a defendant does not have to specifically object to the evidence when it is offered at trial. *Thomas v. State, 408 S.W.3d 877, 881 (Tex.Crim.App. 2013)*. However, if counsel indicates that he has "no objection" to that same evidence it could waive the error that was preserved. *Thomas v. State, 408 S.W.3d 877, 881 (Tex.Crim.App. 2013)*. However, this is not a bright line rule. *Thomas v. State, 408 S.W.3d 877, 885 (Tex.Crim.App. 2013)*. When a defendant has taken pains to file a pretrial motion to suppress, develop testimony at a hearing, and secure an appealable adverse ruling, it is unrealistic to presume that he would likely forgo the opportunity to vindicate his interests on appeal even if he states "no objection" to the introduction of evidence that had already been preserved as a point of error. *Thomas v. State, 408 S.W.3d 877, 885 (Tex.Crim.App. 2013)*.

Therefore, the rule that a later statement of "no objection" will forfeit earlier preserved error is context dependent. *Thomas v. State, 408 S.W.3d 877, 885*

*(Tex.Crim.App. 2013)*. The appellate court should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record. *Thomas v. State, 408 S.W.3d 877, 885 (Tex.Crim.App. 2013)*. If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as waived, but should resolve it on the merits. *Thomas v. State, 408 S.W.3d 877, 885 (Tex.Crim.App. 2013)*.

One example of a "no objection" situation where there was not a waiver of the preservation of error can be found in *Bouyer v. State, 264 S.W.3d 265 (Tex.App. -San Antonio 2008)*. In this case, defense trial counsel both said "no objection" when the targeted evidence was offered and allowed evidence that he was complaining of to be offered without objection before he secured an adverse ruling from the court. *Bouyer v. State, 264 S.W.3d 265, 268 (Tex.App."-San Antonio 2008)*. During a discussion between the court and defense counsel, the court decided to proceed with the case and have the suppression hearing at a later time during the trial. *Bouyer v. State, 264 S.W.3d 265, 268 (Tex.App."-San Antonio 2008)*. Then, before the hearing on the motion to suppress, defense counsel pronounced that he had "no objection" to evidence that was going to be subject to the motion to suppress. *Bouyer v. State, 264 S.W.3d 265 268 (Tex.App."-San Antonio 2008)*. The court thereafter conducted the

hearing and denied the motion to suppress. *Bouyer v. State, 264 S.W.3d 265, 268 (Tex.App.”-San Antonio 2008).* The appellate court recognized that the defendant raised the suppression issue before the introduction of evidence at trial and the trial court advised that it would consider the matter at a later time. *Bouyer v. State, 264 S.W.3d 265, 268 (Tex.App.”-San Antonio 2008).* Then, of course, the court held the hearing even after the "no objection" statements were made, thus showing that the court did not consider the issue waived. *Bouyer v. State, 264 S.W.3d 265, 268 (Tex.App.”-San Antonio 2008).*

In the case at hand, two witnesses testified before the hearing was held on the motion to suppress. (RR 2: 113-153). However, a review of the record shows that this was the procedure that the court decided to follow. The contextual record shows that there was no forfeiture or waiver of the challenged stop and detention of the Appellant. Before any introduction of evidence in the case, there was a discussion concerning the best way to introduce and listen to the video evidence during the trial. (RR 2:100-101). During the discussion, defense counsel brought to the court's attention that the defense had an issue with the stop and that he wanted to urge the defendant's motion to suppress. (RR 2:101). Counsel wanted to urge the motion at "some point" and the court agreed to this suggested procedure. (RR 2:101). With more specificity as to how to proceed on the motion to suppress, the trial judge suggested the following during a discussion with defense counsel:

MR. KNAPP: Um, if the Court would like after the officer is done, if you want to – I mean, I could cross examine him just briefly out of the presence of the jury, watch the first bit of the video and make the argument. And if we are denied then obviously we can come back and watch the video with him and I'll just conduct my cross-examination of him afterwards.

THE COURT: Okay. …

(Discussion about the video)

THE COURT: Okay. Yeah, we can do that if you want to keep him here for the extra minute, you know, that one officer, and then we can – then you can make your motion—

MR. KNAPP: Just so I'm clear --

THE COURT: -- if that is what you want to do.

MR. KNAPP: -- then just so I'm clear then (sic), once she passes the officer, we can just take a break with the jury?

THE COURT: Yeah, I'll just send them out and we'll stay in here. And if you have any additional cross examination –

(Discussion)

THE COURT: That will be fine. And I can give the jury a short recess.

MR. KNAPP: Okay.

THE COURT: And send them out and then we can do our business.

16

MR. KNAPP: Okay.

THE COURT: And bring them back.

MR. KNAPP: You've ruled already.

THE COURT: There you go. I haven't granted of denied nothing. You know me Gary, I know.


This exchange shows that the procedure that the court was going to follow was for witnesses to testify and therefore some of the evidence of the trial concerning the contested evidence challenged by the motion to suppress would be admitted before the court would have a chance to hear and rule on the motion to suppress. So, like the *Bouyer* case, there was no waiver by having evidence admitted prior to the motion to suppress that was targeted by the motion.

The other issue concerning waiver is the "no objection" response that counsel gave when the video evidence, lab report evidence, and the blood kit were introduced after the court denied the motion to suppress. (RR 2: 194, 212: RR 3: 42). It is clear, though, from the record as a whole that counsel had no intent to waive the error that he had preserved with the hearing and adverse ruling in the motion to suppress.

When the efforts of counsel are examined as to the motion to suppress there can be no mistake that he wanted to preserve the point of error that he raised. Counsel filed a written motion to suppress (CR 53), alerted the court prior to any

evidence being offered at trial that he wanted to present the motion to suppress to the court (RR 2: 101), offered evidence for the motion through the arresting officer (RR 2: 153), and asked the court to consider the first portion of the video that was state's exhibit 1 (RR 2: 101-102). All of these actions along with a reading of the record as a whole show that counsel was making the motion to suppress the keystone of his defense of the Appellant. He had no intent to abandon his suppression issue and his actions clearly made the court aware of his position. Because the context of the case shows there was no abandonment, the "no objection" statements should not be construed to abandon the suppression preservation of error that he secured from the court.

There is no articulable reasonable reason in this case why counsel would want to abandon this point of error. Watching the video evidence of State's Exhibit 1 makes it seem likely that the Appellant would be convicted of the offense. (State's Exhibit 1). There is no doubt that she was driving and little question from the video evidence that she was impaired. Therefore, the only real defense in this case is the suppression issue. The interests of justice would not be served if the Appellant's sole point of error, that defense counsel clearly made an issue, was not reviewed. Because it is clear that trial counsel was making his motion to suppress the primary defense at trial and that the court is aware that counsel is advancing this issue, there is no waiver or forfeiture of the preserved point of error that was developed in the motion

to suppress.

Although the law and the evidence supports the finding that there was not an abandonment of the Appellant's point of error developed through the motion to suppress, if the court finds that there was a waiver, the Appellant would urge the court to abandon the "no objection" waiver rule. It serves no real purpose except to disallow the Appellant of a case to have their complaint heard and considered on appeal. The Court of Criminal Appeals recognized the criticism the rule has come under in *Thomas v. State, 408 S.W.3d 877, 882 and footnote 16 (Tex.Crim.App. 2013).* It is human nature to want to cooperate and be cordial with the trial judge. To say "no objection" when there is not any additional objection can be said more as a matter of habit rather as a matter of thought. So an accidental "no objection" can thereby waive a defendant's point of error. The "no objection" waiver rule is a gotcha rule that only really serves to deny an appellant the desired appellate review of his or her case. That is simply, not justice.

Still, even if this court does not find that the point of error was preserved, and if the court declines to abandon the "no objection" waiver rule, there is still additional evidence that was introduced by the state that the motion to suppress would have disallowed if granted and this evidence was not waived. Other than what the arresting officer saw when he testified regarding initially seeing the car, the rest of the trial was evidence that was developed and occurred after the illegal stop of the

Appellant's vehicle. (See Reporters Record). This includes the remainder of Officer Brown's testimony after the motion to suppress was denied, (RR 2: 161 – 176), the testimony of the Drug Recognition (DRE) Officer (RR 2: 177- 204), the testimony of the nurse who drew the blood (RR 2:207- 212), the testimony of the chemist who explained some of the blood tests results (RR 3: 12 – 20), the testimony of another chemist explaining another part of the blood test (RR 3: 30 – 34), and finally a third chemist who explained another part of the blood test (RR 3: 37 – 48). All of this evidence arose out of the stop of the Appellant and would have been suppressed if the trial court had granted the motion to suppress. Therefore there is significant evidence that was introduced into the case that was subject to the motion to suppress and therefore is ripe for review as evidence that should have been suppressed if the court erred in the denial of that motion.  What now remains is the issue of whether the stop of the Appellant was illegal.

**Detention**

A detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave to leave. *Johnson v. State, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995)*. So the question is whether a reasonable person in the citizen's position would have felt free to decline the

officer's requests or otherwise terminate the encounter. *Hudson v. State, 205 S.W.3d 600, 604 (Tex. App. – Waco 2006).* The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures at the hands of government officials. *Crain v. State, 315 S.W.3d 43, 52 (Tex.Crim.App. 2010), Fourth amendment to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas, and article 38.23 of the Texas Code of Criminal Procedure.*

In this case, the Appellant was beginning to drive away in her car when an officer who had moments before pulled in a position in front of her car and was outside of his own patrol car, "stopped her there." (RR 2: 127). By the officers own testimony he conceded that she was stopped. On the video tape the Appellant is plainly visible leaving the area but for the officer's intervention. (State's exhibit 1). What the officer does not say but what can be seen on the video is that he was shining his spotlight onto the Appellant's car right before she was pulling away from the curb. (State's Exhibit 1). The light directed at her car would have been right before she started to drive her car and right before he stopped her. (State's Exhibit 1). The video also shows that the officer was wearing a police uniform with equipment belt and that he was a much larger person than the Appellant. (State's Exhibit 1).

Any reasonable person who was attempting to go about their business and drive away, but was stopped from proceeding by a uniformed patrol officer in this manner

would be under a reasonable believe that he or she was not free to leave. This encounter was a detention. So the issue now becomes whether the officer had reasonable suspicion to authorize the detention of the Appellant as she was trying to leave.

**Reasonable suspicion determination**

Reasonable suspicion exists if an officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. *Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001)*. This is an objective standard that disregards any subjective intent of the officer. *Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005)*. The officer's detention of someone must be justified at its inception. *St. George v. State, 237 S.W.3d 720, 726 (Tex.Crim.App. 2007)*. Although there is not a bright line test as to exactly when, if the reason for the initial detention is ended, continued detention is unreasonable. *St. George v. State, 237 S.W.3d 720, 727 (Tex.Crim.App. 2007)*.

The review of this issue is bifurcated. *Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001)*. The reviewing court should give almost total deference to a trial court's determination of historical and application of law to fact questions that turn on credibility and demeanor. *Garcia v. State, 43 S.W.3d 527, 530*

*(Tex.Crim.App. 2001).* Application of law to fact questions that do not turn upon credibility and demeanor are reviewed *de novo. Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001).*

In this case under review, the court did not make any findings of fact regarding the Appellant's *Motion to Suppress.* (See RR). When there are no statement of facts, the review of the evidence will be in a light most favorable to the trial court's rulings. *Carmouche v. State, 10 S.W.3d 323, 327-328 (Tex. Crim. App. 2000).*

When reviewing whether reasonable suspicion was shown at the trial court, the reviewing court must be presented with more than a conclusory statement. *Ford v. State, 158 S.W.3d 488, 493 (Tex.Crim.App. 2005).* Without specific facts, the detention cannot be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular seizure in light of the particular circumstances. *Ford v. State, 158 S.W.3d 488, 493 (Tex.Crim.App. 2005).* For instance, an officer's opinion that a vehicle was following too close without specific articulable facts to support that conclusion is not sufficient to justify a detention for the traffic offense of following too close. *Ford v. State, 158 S.W.3d 488, 493-494 (Tex.Crim.App. 2005).*

Another example shows a situation where there was no reasonable suspicion to detain a man who was walking at night in a high crime area. *Crain v. State, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010).* While he was walking an officer saw him

grab at his waist*. Crain v. State, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010).* The officer left to another call but returned. *Crain v. State, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010).*When he did return, he shined a spotlight on the man and told him to come over and talk to me. *Crain v. State, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010).* However, there was no evidence that showed that the man was engaging in criminal activity. *Crain v. State, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010).* There was nothing to raise a suspicion that the man was engaged in criminal behavior.

The appellant's situation is similar. Although the officer testified that there was a car with a door open that the officer saw, the only thing the appellant was observed dong was walking along the road. There was no evidence that she was engaging in any criminal activity. Even an open car door, if it was even open which the video tape seems to show closed, doesn't show more than that – an open car door. Once she was in her car there was absolutely no evidence presented that she was committing a crime – the best the officer could say was that he was engaged in a caretaking function.

It is also significant to what the officer did not say. He didn't say that the area was a high crime area, there were recent car burglaries, there were calls from citizens reporting crime, or that the appellant did something that could be construed as engaging in criminal activity or even that she was about to engage in a criminal activity. What we are left with is a woman who was walking along a road until she

got into a car and began to drive away. That is something that happens untold times every day. There was no reasonable suspicion for the detention of the appellant. The only other thing that could justify a stop is if the officer could have detained the appellant for a community caretaking reason.

**Community Caretaking**

A community caretaking stop does not require the officer to have reasonable suspicion. *Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002)*. The community caretaking exception requires that the police officer was primarily motivated by a community caretaking purpose and second, whether the officer's belief that the individual needed help was reasonable. *Corbin v. State, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002)*. In this case there is absolutely no indication that the officer thought the appellant needed any help at all, so the community caretaking exception does not apply.

**Conclusion**

The court agreed to a procedure that allowed the motion to suppress to be heard after officers has testified about matters that occurred after the stop of vehicle. Since this was the procedure that the court approved, there was no waiver from the officers testifying to matters of the case before the motion was heard. Likewise, it was clear that defense counsel wanted to preserve error regarding the motion to

suppress, so his statement of "no objection" did not waive the preservation of error.

As to the issue at hand, the officer did not have reasonable suspicion or any other legal reason to detain the appellant. This was therefore a violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas and article 38.23 of the Texas Code of Criminal Procedure. Because the stop was illegal, all of the evidence that was developed after the point of the detention of the car should have been suppressed and now the case should be reversed and remanded for further proceedings.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the undersigned attorney requests this Court of Appeals to review the record on regarding this appeal, reverse the trial court's ruling on the motion to suppress and remand this case to the trial court for further proceedings.

**Respectfully submitted**,

John L. Schomburger
Attorney for the Appellant
BCN 17801540
555 Republic Drive #200
Plano, Texas 75023
jschomburger@gmail.com

## CERTIFICATE OF COMPLIANCE

This 5494 word brief complies with Appellate Rule 9.4(i).

_____
John L. Schomburger

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Brief has been served on the Appellate Division of the Collin County District Attorney's Office, email at daappeals@co.collin.tx.us, on April 13, 2015.

_____
John L. Schomburger