

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00023-CR

BRAD SHERMAN BAPTISTE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 12
Bexar County, Texas[1]
Trial Court No. 531008, Honorable Maria Herr, Presiding

April 21, 2020

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Brad Sherman Baptiste, appeals from his jury conviction for the offense of driving while intoxicated, court-imposed sentence of six months in jail probated for two years, and an $800 fine. We affirm the judgment of the trial court.

---

[1] Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

Factual and Procedural Background

Around 1:00 a.m. on November 16, 2016, San Antonio Police Officer Jason Portillo witnessed a driver commit four traffic violations, specifically failing to signal a lane change and three instances of veering into other lanes of traffic. On this basis, Portillo initiated a traffic stop of the vehicle. Appellant was the vehicle's driver. When Portillo asked appellant for his identification, appellant had trouble producing his identification as he fumbled through his wallet. While appellant fumbled through his wallet, Portillo noticed that appellant had bloodshot and glassy eyes. Portillo asked appellant if he had been drinking and appellant responded that he had not had that much and that he had stopped drinking approximately three hours ago.

Portillo determined that he needed to administer field sobriety tests on appellant. The first test he administered was the horizontal gaze nystagmus (HGN). According to Portillo, appellant exhibited six of six clues for intoxication on the HGN. Portillo obtained appellant's consent for Portillo to administer the walk-and-turn test. Appellant complained that the area where Portillo was attempting to administer the test was uneven, so Portillo moved to a different location. Portillo began administering the test again over appellant's continued complaints that the new area was also uneven. According to Portillo, appellant exhibited seven of eight clues for intoxication on the walk-and-turn test. Finally, Portillo administered the one-leg stand test. Appellant continued to complain that the testing surface was uneven. Portillo determined that appellant exhibited three of four clues for intoxication on the one-leg stand test. Because the field sobriety tests reflected that appellant was intoxicated, Portillo placed appellant under arrest for driving while intoxicated. After placing appellant under arrest, Portillo read appellant his *Miranda* rights

2

and the standard DIC-24 statutory warnings and verified that appellant understood his rights. Appellant refused to provide a breath specimen.

After appellant was placed under arrest, Portillo transported him to the magistrate's office. The magistrate issued a search warrant authorizing a draw of appellant's blood. Appellant's blood was tested and had a blood-alcohol concentration of 0.176, which is slightly more than twice the legal limit.

Appellant was charged with DWI. At his trial, the above facts were elicited. Appellant testified on his own behalf. Appellant testified that, on the night of his arrest, he drank two to three cups of cognac earlier in the evening, but no more than four ounces total. He could not explain how his blood testing would reflect a blood-alcohol concentration of over twice the legal limit. At the close of the trial, a jury convicted appellant of the offense of driving while intoxicated. Appellant then changed his previous election and opted to have the trial court assess his sentence. The trial court sentenced appellant to six months in jail probated for two years, and an $800 fine. From the resulting judgment, appellant timely appeals.

By his appeal, appellant presents a single issue. Appellant contends that the trial court abused its discretion when it overruled appellant's objections to statements appellant made on a dash-cam video because the statements were made in response to custodial interrogation and in violation of the United States and Texas Constitutions. The State responds that appellant failed to preserve his objections to the dash-cam video and contends that the evidence was not obtained through custodial interrogation.

Preservation of Error

We agree with the State that appellant did not timely preserve his complaint regarding the admission of the dash-cam video. "Preservation of error is a systemic requirement." *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). If an issue has not been properly preserved for appeal, a reviewing court should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). In fact, it is the duty of this Court to ensure that a claim is preserved in the trial court before addressing its merits. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g) (per curiam). To properly preserve a complaint for appeal, the record must show that the complaining party made a timely request, objection, or motion that identified the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A); *see* TEX. R. EVID. 103(a)(1). An objection should be made as soon as the ground for the objection becomes apparent, which is generally when the evidence is admitted. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc). Failing to object at the time evidence is admitted, without a showing of a legitimate reason to justify the delay, waives the claim of error. *Id.*

In the present case, appellant failed to preserve his claim of error in the admission of his statements recorded on the dash-cam video. Prior to trial, appellant reviewed the dash-cam video and the State agreed to make certain redactions to the video. During trial, when the State offered its Exhibit 6, the dash-cam video, appellant affirmatively stated that he had "[n]o objection" to its admission. "When the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence . . . ." *Ex parte Moore*, 395 S.W.3d

152, 157 (Tex. Crim. App. 2013) (orig. proceeding). Consequently, appellant's contention that the dash-cam video should be excluded from evidence has not been preserved for our review.[2]

However, the primary reason that appellant's objection to the dash-cam video is not preserved is that his objection to this evidence was untimely. After the video was admitted into evidence and was being presented to the jury, appellant first objected approximately ten minutes into the video. Because this objection was not raised until after the exhibit had already been introduced and no legitimate reason to justify the delay was identified by appellant, his objection to the admission of the dash-cam video was waived. *Dinkins*, 894 S.W.2d at 355.

---

[2] Each of the cases cited by the concurrence involve an instance in which the defendant had previously preserved his claim of error prior to stating that he had "no objection" to the evidence when subsequently offered. *See Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013) (error previously preserved by pre-trial motion to suppress); *Bouyer v. State*, 264 S.W.3d 265, 268-69 (Tex. App.—San Antonio 2008, no pet.) (error preserved by pre-trial motion to suppress even though hearing on motion not held until after the evidence was admitted); *Shedden v. State*, 268 S.W.3d 717, 730 (Tex. App.—Corpus Christi 2008, pet. ref'd) (error preserved by pre-trial motion to suppress and trial court specifically advised by defendant that he did not intend to waive his objections to admission of the evidence); 43A George E. Dix And John M. Schmolesky: Criminal Practice And Procedure § 53:150 (3d ed. 2011) (waiver "open to doubt" where defense counsel's "no objection" statement might have been intended to mean that defendant had no objections *beyond those already presented* and rejected and the trial court was not misled into believing that the defense no longer wished to pursue that objection). We conclude that these cases hold that a defendant's statement of "no objection" to the State's proffered evidence does not forfeit the defendant's earlier-preserved claim of error in the admission of the evidence.

In the present case, however, appellant did not previously preserve his claim of error in the admission of the evidence reflected in the dash-cam video. He did not file a motion to suppress the dash-cam video and he had not apprised the trial court of any objection relating to the dash-cam video prior to its admission. *See Madrigal v. State*, No. 07-14-00350-CR, 2016 Tex. App. LEXIS 7487, at *5-6 (Tex. App—Amarillo July 13, 2016, pet. ref'd) (where defendant "never obtained a hearing, or a ruling, on his motion to suppress, *Thomas* has no application.").

Custodial Interrogation

However, even if appellant had timely objected to introduction of the dash-cam video, the statements made by appellant that were recorded by the dash-cam were not the result of custodial interrogation.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  A court abuses its discretion if its decision is arbitrary, unreasonable, or is made without reference to any guiding rules or principles.  *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

The Fifth Amendment of the United States Constitution protects an individual from being compelled to be a witness against himself in any criminal case.  *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007).  The warnings required by *Miranda*[3] were established to protect an uncounseled individual's privilege against self-incrimination during custodial interrogation.  *Id.*  Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.*  A person is in custody if "a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest."  *Id.*  A DWI investigation that includes questioning before, during, or immediately after field sobriety tests does not by itself give rise to custody.  *State v. Stevenson*, 958 S.W.2d 824, 828-829 (Tex. Crim. App. 1997) (en banc) (discussing *Berkemer v. McCarty*, 468 U.S. 420, 441, 104 S. Ct. 3138,

---

[3] *Miranda v. Ariz.*, 384 U.S. 436, 498-99, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

82 L. Ed. 2d 317 (1984), as concluding that the administration of field sobriety tests followed immediately by questioning was not custodial interrogation).

In the present case, appellant was not in custody when he made the statements recorded in the dash-cam video. Immediately upon effectuating the traffic stop, Portillo asked appellant for his identification. After appellant was unable to locate his license, Portillo asked appellant if he had been drinking and appellant admitted that he had but that it was not that much. Portillo began performing field sobriety tests to determine whether it would be safe for appellant to drive. Appellant voiced no objection to performing the tests, other than claiming that the surface was uneven. Appellant expressly consented to perform the walk-and-turn test. Only after Portillo completed all three field sobriety tests was appellant placed under arrest. Consequently, any statements appellant gave as a result of Portillo's questioning were not obtained from custodial interrogation.

Appellant contends that, after Portillo completed the HGN, appellant was in custody because Portillo had enough information at that time to arrest appellant. However, the test to determine whether a person is in custody is not based on whether the officer has sufficient information to warrant an arrest but, rather, whether the individual believed that their freedom of movement was restrained to the degree associated with a formal arrest. *See Herrera*, 241 S.W.3d at 525. Appellant simply concludes that Portillo's investigative detention became an arrest after Portillo completed the HGN. We do not agree that a reasonable person would have believed that they were in custody during the period after the HGN but before appellant was placed under formal arrest.

7

Finally, the purpose of providing constitutional warnings before custodial interrogation is to protect an individual's right against self-incrimination. *Id.* Nothing that appellant said after Portillo completed the HGN was incriminating. According to appellant, the statements that he made that should have been excluded were that he had not had anything to drink in three hours, the ground where the field sobriety tests were being performed was not level, and that he had been "doing this shit all my life." The only other statement made by appellant during this time was his assertion that he was not intoxicated immediately prior to being placed under formal arrest.

## Conclusion

Because appellant failed to preserve his complaint regarding the admission of evidence during his trial, we overrule his sole issue and affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.

Pirtle, J., concurring and dissenting.